UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

IN RE                                         )
                                              )    Case No. 09-00970-TLM
DAVID LEE CARLSON and                         )
KATHERINE CARLSON                             )    Chapter 7
                                              )
            Debtors.                          )
_____  )

**MEMORANDUM OF DECISION**
_____

**INTRODUCTION**

This matter is before the Court on the chapter 7 trustee's objection to the Debtors' claim of exemption. Fed. R. Bankr. P. 4003(b).[1] A hearing was held August 11, 2009, and the Court took the matter under advisement. Having evaluated the evidence and argument submitted, the Court concludes that the Trustee's objection will be sustained. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 9014, 7052.

**FACTS**

On April 17, 2009, David and Katherine Carlson ("Debtors") filed a joint voluntary petition for relief under chapter 7, together with the required schedules.

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION - 1

Doc. No. 1. Schedule B listed among Debtors' personal property a

> [h]ardship withdrawal from 401K, used to attempt to do loan modification with secured creditors on home and assist in family obligations; in segregated account at US Bank #6761

with a current value of $19,033.69. *Id.* In their schedule C Debtors claimed the $19,033.69 "hardship withdrawal" as exempt under "Idaho Code § 11-604(A) [*sic* § 11-604A]." Trustee timely objected to the exemption claim. Doc. No. 20; Fed. R. Bankr. P. 4003(b)(1).

The material facts are not in dispute.[2] Approximately eleven years ago, Ms. Carlson procured employment with Weyerhaeuser Company in Boise, Idaho. Sometime thereafter, Ms. Carlson enrolled in Weyerhaeuser's 401(k) plan, administered by The Vanguard Group, Inc., and "rolled over" funds from a previously held retirement plan into the 401(k). Ms. Carlson thereafter made regular contributions to the plan during her employment with Weyerhaeuser.[3]

In 2004, Debtors purchased a home at 4590 N. Torridon Way in Boise, Idaho. The property is subject to two mortgages, the first held by IndyMac Bank, and the second by Wells Fargo Bank. In 2008, Debtors fell behind on their mortgage payments and began exploring ways to avoid foreclosure.

On February 17, 2009, Ms. Carlson applied for a hardship withdrawal from

---

[2] The parties stipulated to the admission of Exhibits 200-204 at the hearing.

[3] At the hearing, Ms. Carlson testified that she is no longer employed by Weyerhaeuser.

MEMORANDUM OF DECISION - 2

her 401(k) to "prevent eviction or foreclosure of [Debtors'] principal residence."[4] Ex. 200. Ms. Carlson's application was partially granted and on February 24, 2009, she received a notice from Vanguard confirming a withdrawal of $24,139.47 from her 401(k) account. Ex. 202. After withholding $2,413.95 in federal taxes, Debtors received a net distribution of $21,725.52. *Id.*

On March 2, 2009, Debtors deposited the $21,725.52 distribution in a U.S. Bank money market account they identified as "401k Proceeds 2009." Ex. 203. A withdrawal was made from the account on March 19, 2009 in the amount of $2,701.57, leaving a balance of $19,023.95. *Id.* Ms. Carlson testified that the $2,701.57 was used to make a mortgage payment to IndyMac. At the time of the bankruptcy filing on April 17, 2009, the account balance was $19,046.99. Ex. 204. Ms. Carlson testified that the balance as of the hearing date was approximately $19,082.00. These minimal increases were due to accrued interest. No funds were added to the account other than the hardship withdrawal proceeds, and the parties agree there has been no "commingling" of funds.

The question before the Court is a legal one – are the funds in Debtors' U.S. Bank money market account, which consist entirely of proceeds from a "hardship withdrawal" from Ms. Carlson's 401(k) plan, exempt under Idaho Code

---

[4] Although the first page of the application lists January 23, 2009 as the "application date," Ms. Carlson did not sign and date the application until February 17, 2009.

MEMORANDUM OF DECISION - 3

§ 11-604A?

**DISCUSSION AND DISPOSITION**

The general authorities regarding exemptions in bankruptcy are well established. Upon commencement of a bankruptcy case, all property in which the debtor has a legal or equitable interest becomes property of the bankruptcy estate. *See* § 541(a). A debtor, however, may exempt certain types of property from the estate under state or federal law. *See* § 522(b), (d). Section 522(b)(2) allows states to "opt out" of the federal bankruptcy exemption scheme provided in § 522(d). "Idaho has opted out, and its law specifically precludes a debtor's use of the federal exemption scheme." *In re Almgren*, 384 B.R. 12, 15, 08.1 I.B.C.R. 3, 3 (Bankr. D. Idaho 2007); Idaho Code § 11-609. Accordingly, Idaho debtors are limited to the exemptions permitted by Idaho law. *In re McClelland*, 08.1 I.B.C.R. 5, 6, 2008 WL 89901, at *2 (Bankr. D. Idaho, Jan. 7, 2008) (citing *In re Skaar*, 98.1 I.B.C.R. 13, 13 (Bankr. D. Idaho 1998)).

Property of the bankruptcy estate and a debtor's entitlement to exemptions are both determined as of the date the petition is filed. *In re Bonner*, 135 B.R. 645, 647 (9th Cir. BAP 1992); *In re Parks*, 96.2 I.B.C.R. 64, 64-65 (Bankr. D. Idaho 1996). Idaho's exemption statutes are to be liberally construed in favor of the debtor. *In re Wiley*, 352 B.R. 716, 718 (Bankr. D. Idaho 2006) (citing *Parks*, 96.2 I.B.C.R. at 65). "However, the statutory language may not be 'tortured' in

MEMORANDUM OF DECISION - 4

the guise of liberal construction." *Id.* (citing *In re Collins*, 97.3 I.B.C.R. 76, 79 (Bankr. D. Idaho 1997)). As the objecting party, Trustee bears the burden of proving Debtors exemption is not properly claimed. Rule 4003(c).

Debtors claim the money market account as exempt under Idaho Code § 11-604A. That section provides, in relevant part:

> (1) It is the policy of the state of Idaho to ensure the well-being of its citizens by protecting retirement income to which they are or may become entitled. For that purpose generally and pursuant to the authority granted to the state of Idaho under 11 U.S.C. section 522(b)(2), the exemptions in this section relating to retirement benefits are provided.
>
> . . .
>
> (3) *The right of a person to a pension, annuity, or retirement allowance or disability allowance, or death benefits, or any optional benefit, or any other right accrued or accruing to any citizen of the state of Idaho under any employee benefit plan*, and any fund created by the benefit plan or arrangement, *shall be exempt* from execution, attachment, garnishment, seizure, or other levy by or under any legal process whatever. . . .
>
> (4) For purposes of this section, the term *"employee benefit plan" means:*
>
> (A) Assets held, payments made, and amounts payable under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract, providing benefits by reason of age, illness, disability, or length or service;
>
> (B) *Any plan or arrangement, whether funded by a trust, an annuity contract, an insurance contract, or an individual account, that is described in sections 401(a)*, 403(a), 403(b), 408, 408A or 457 of the Internal Revenue Code of 1986, as amended, or section 409 of the Internal Revenue Code as in effect before January 1, 1984. . . .

(emphasis added). This Court has had reason to interpret Idaho Code § 11-604A on several occasions. Two prove instructive here.

MEMORANDUM OF DECISION - 5

In *In re Lowe*, the debtor claimed as exempt under Idaho Code § 11-604A funds distributed to her upon the termination of her employer's pension plan, which she had subsequently deposited in a certificate of deposit. 97.1 I.B.C.R. 24, 24 (Bankr. D. Idaho 1997). In finding the funds non-exempt, the Court rejected the debtor's argument that the funds in the CD should retain their former protected status because they were proceeds from a qualified plan. The Court stated:

> [Idaho Code § 11-604A] does not, however protect funds solely because at one time they were on deposit in a qualified plan. *To qualify as exempt, the funds must either continue in an employee benefit plan or be paid to Debtor on account of one of the statutory conditions.* In this case, Debtor received the funds from [her employer] via an extraordinary distribution. They were not benefits received under the plan by reason of age, illness, disability, or length of service as required by Idaho code § 11-604A(4)(a). Upon receipt of her retirement funds Debtor failed to "roll-over" her account balance into another qualified plan as defined by Idaho Code § 11-604A(4)(b), thereby terminating the funds' protection.

*Id.* at 25 (emphasis added).

In *In re Kane*, the Court found on conflicting evidence that a debtor had liquidated and withdrawn his holdings in a 401(k) retirement account prior to filing for bankruptcy. 99.4 I.B.C.R. 175, 175, 1999 WL 33490225, at *1 (Bankr. D. Idaho, November 24, 1999). Based on this finding, the Court determined that the proceeds from the 401(k) were not exempt under Idaho Code § 11-604A. *Id.* at 177, 1999 WL 33490225, at *4. The Court considered and rejected the proposition that an exemption was available for the proceeds of a retirement

MEMORANDUM OF DECISION - 6

account terminated or liquidated pre-petition, relying on its analysis in *Lowe*.[5] *Id.*

Thus, to be exempt, funds must either continue in an employee benefit plan or be paid to the debtor on account of one of the conditions listed in Idaho Code § 11-604A(4)(a). *Kane*, 99.4 I.B.C.R. at 177, 1999 WL 33490225, at *4; (citing *Lowe*, 97.1 I.B.C.R. at 25).

Neither of these conditions was satisfied in the instant case. As in *Lowe* and *Kane*, Debtors here were holding the subject funds in a non-qualified form when they filed their petition. Once Debtors withdrew the funds from Ms. Carlson's 401(k) plan, those funds lost their exempt status. They remained non-exempt while on deposit in the U.S. Bank money market account which, despite its "401k Proceeds" label, is not protected under Idaho Code § 11-604A.

That the 401(k) plan provided for the withdrawal of funds on account of certain financial hardships is of no moment.[6] The funds were not distributed under the 401(k) plan "by reason of age, illness, disability, or length of service" and

---

[5] Though the debtors in *Kane* did not assert this particular argument because it would have been inconsistent with their position that the 401(k) account was intact at the time of filing, the Court deemed it prudent to address the issue as it naturally arose from its finding that the 401(k) was liquidated prepetition. 99.4 I.B.C.R. at 177, 1999 WL 33490225, at *4.

[6] Under the Weyerhaeuser 401(k) plan, Ms. Carlson could apply for a "hardship withdrawal" for the following reasons: (1) purchase a principal residence (excluding mortgage payments); (2) pay expenses to prevent eviction or foreclosure of a principal residence; (3) pay tuition and/or related educational fees for a year of post-secondary education for the employee or the employee's spouse, children, or other dependents; (4) pay medical expenses for the employee or the employee's spouse, children, or other dependents; (5) pay funeral expenses of an immediate family member; or (6) repair damage to a principal residence which qualifies as a casualty deduction. Ex. 200.

MEMORANDUM OF DECISION - 7

consequently were not made under an "employee benefit plan" for purposes of Idaho Code § 11-604A(4)(a). "Hardship" is not one of the conditions listed in the statute. In this respect, Debtors' "hardship withdrawal" is similar to the "extraordinary distribution" that did not receive exempt status in *Lowe*. *See* 97.1 I.B.C.R. at 25.

That Debtors never commingled the withdrawn 401(k) funds is likewise irrelevant. The mere fact that such funds have not been commingled and are therefore easily traced does not preserve the previously exempt status of those funds in the 401(k) because the statute does not provide an exemption in proceeds.[7] Indeed, the debtor in *Lowe,* like Debtors here, also refrained from commingling her plan proceeds with other funds. 97.1 I.B.C.R. at 24.

The funds in Debtors' money market account neither continued to be held in an employee benefit plan, nor were they paid to Debtors on account of one of the statutory conditions. Rather, they were paid on account of "hardship" and were thereafter held in a non-qualified money market account. Consequently,

---

[7] Compare Idaho Code § 11-604A with Idaho Code § 55-1008 which exempts

> The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, and proceeds from insurance covering destruction of homestead property held for use in restoring or replacing the homestead property, up to the amount specified in section 55-1003, Idaho Code, shall likewise be exempt for one (1) year from receipt, and also such new homestead acquired with such proceeds.

Idaho Code § 55-1008(1).

MEMORANDUM OF DECISION - 8

Debtors' right to exempt the funds no longer existed.

**CONCLUSION**

Based on the evidence presented and the analysis above, Trustee's objection to the claim of exemption is sustained and the exemption is disallowed.

Trustee shall submit a form of order.

DATED: August 20, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE